HASSAN W. SHAABAZZ,[1]

        Petitioner,

v.                            Case No. 3:18-cv-506-MMH-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Hassan W. Shaabazz, an inmate of the Florida penal system, initiated this action on April 13, 2018,[2] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[3] In the Petition, Shaabazz challenges a 2013 state court (Duval County, Florida) judgment of conviction for burglary of an occupied dwelling. He raises four grounds for relief. See

---

[1] The state-court record refers to Petitioner as "Shabazz." However, since Petitioner refers to himself as "Shaabazz" in this proceeding, the Court will refer to him as "Shaabazz."

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[3] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Petition at 3-13. Respondents have submitted a memorandum in opposition to the Petition. See Answer (Response; Doc. 18). They also submitted exhibits. See Docs. 18-1 through 18-16. Shaabazz filed a brief in reply. See Reply (Doc. 24). This action is ripe for review.

## II. Relevant Procedural History

On March 2, 2012, the State of Florida charged Shaabazz, by Information in case number 16-2012-CF-001355-AXXX-MA, with burglary of an occupied dwelling. See Doc. 18-1 at 19. At the conclusion of a trial on July 16, 2013, a jury found Shaabazz guilty, as charged. See Docs. 18-1 at 103-04, Verdict; 18-2 through 18-5, Transcripts of the Trial Proceedings (Tr.), at 466-67.[4] The circuit court sentenced Shaabazz to a term of imprisonment of twenty-three years, as a habitual felony offender (HFO), with a minimum mandatory term of fifteen years imposed as a prison releasee reoffender (PRR) on August 20, 2013. See Doc. 18-1 at 111-17, Judgment; 125-71, Transcript of the Nelson[5] and Sentencing Hearing (Sentencing Tr.).

Shaabazz, with the benefit of counsel, filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) (Rule 3.800

---

[4] The Court will cite the page number in the upper-righthand corner of the transcript.

[5] In Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), the Fourth District Court of Appeal held that if an indigent defendant expresses a desire to discharge court-appointed counsel because of counsel's ineffectiveness, the

motion) on January 27, 2014. <u>See</u> Doc. 18-6 at 3-12. In the Rule 3.800 motion, Shaabazz asked that the court remove the PRR designation, the fifteen-year PRR minimum mandatory sentence, and the $100.00 Sheriff's Office investigative cost. On March 24, 2014, the court granted the Rule 3.800 motion as to the Sheriff's investigative cost, and denied the motion with respect to Shaabazz's assertions relating to his PRR sentence. <u>See</u> <u>id.</u> at 13-19; <u>see also</u> <u>id.</u> at 27-33, Amended Judgment.

On direct appeal, Shaabazz, with the benefit of counsel, filed an initial brief, arguing that the trial court imposed the PRR sentence in violation of <u>Alleyne v. United States</u>, 570 U.S. 99 (2013), where the facts necessary to impose such sanctions were not found by a jury beyond a reasonable doubt and where the State's intent to seek such sanctions was not alleged in the Information. <u>See</u> Doc. 18-7. The State filed an answer brief, <u>see</u> Doc. 18-8, and Shaabazz filed a reply brief, <u>see</u> Doc. 18-9. On July 8, 2014, the appellate court (First DCA) affirmed Shaabazz's conviction and sentence per curiam without issuing a written opinion, <u>see</u> Doc. 18-10, at 1, and denied Shaabazz's motion for rehearing on August 19, 2014, <u>see</u> <u>id.</u> at 2-6. The court issued the mandate on September 4, 2014. <u>See</u> <u>id.</u> at 9.

---

trial court must hold a hearing to determine whether there is reasonable cause to believe that the court-appointed counsel is not rendering effective assistance to the defendant.

Shaabazz filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) on August 21, 2015, see Doc. 18-11 at 1-62, and a substantially similar Rule 3.850 motion on June 13, 2016, see Doc. 18-12 at 1 n.2. In his request for postconviction relief, Shaabazz asserted that his trial counsel was ineffective because he failed to: attack a deficient charging document and erroneous jury instructions (ground one), see Doc. 18-11 at 5-9; suppress Shaabazz's statements to police (ground two), see id. at 9-13; properly advise Shaabazz of the benefits and disadvantages of testifying as a convicted felon (ground four), see id. at 15-17; object to the State's bolstering and character attacks at trial (ground five), see id. at 17-19; attack the sufficiency of the Information by moving for an arrest of judgment (ground six), see id. at 19-21; and present mitigation evidence relating to Shaabazz's drug addiction at sentencing (ground seven), see id. at 21-22. He also asserted that trial counsel was ineffective because he conceded Shaabazz's guilt (ground three). See id. at 13-15. On July 11, 2016, the circuit court struck grounds one, two, three, and six, and granted Shaabazz an opportunity to amend his claims. See Doc. 18-12.

Shaabazz filed a pro se amended Rule 3.850 motion on January 28, 2017. See Doc. 18-13 at 1-13. In his amended request for postconviction relief, he voluntarily withdrew grounds one, two, three, and six. See id. at 2. Additionally, he added two claims, asserting that trial counsel was ineffective

because he failed to: inform Shaabazz that the State offered a ten-year plea (ground eight), see id. at 2-8; and file a motion to suppress relating to an illegal search of Shaabazz's cellular phone (ground nine), see id. at 9-12. The circuit court denied grounds four, five, and seven on February 10, 2017. See Doc. 18-14 at 3-8. Additionally, the court stated that grounds eight and nine "are new claims raised outside the two-year filing period," and therefore, "are procedurally barred as untimely." Id. at 8. Alternatively, the court stated that Shaabazz was "not entitled to relief" on either ground. Id. On appeal, Shaabazz did not file a brief despite the fact that the First DCA granted him an extension of time to do so. The First DCA affirmed the circuit court's denial of Shaabazz's amended Rule 3.850 motion per curiam without issuing a written opinion on February 5, 2018, see Doc. 18-16 at 1, and issued the mandate on March 5, 2018, see id. at 3.

## III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a

hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Shaabazz's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'"

Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.

Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[6] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention"

---

6 The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Wilson</u>, 138 S. Ct. at 1191-92), <u>cert. denied</u>, 140 S. Ct. 394 (2019). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v.</u>

> Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747-748, 111 S. Ct. 2546; Sykes,[8] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites,

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).

[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is
> firmly established and consistently followed. See, e.g.,
> Walker v. Martin, 562 U.S. 307, 316, 131 S. Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler,
> 558 U.S. 53, 60-61, 130 S. Ct. 612, 617-618, 175
> L.Ed.2d 417 (2009). The doctrine barring procedurally
> defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[9]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

In Martinez, the Supreme Court recognized an exception to the general procedural default rule. 566 U.S. at 9. The Court held that where a claim of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding under state law, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 17. Thus, to demonstrate cause under Martinez, a petitioner must establish: (1) a substantial claim of ineffective assistance of trial counsel; (2) he had no counsel or had ineffective assistance of counsel during the initial-review collateral proceeding; (3) the state collateral proceeding was the initial review proceeding with respect to the ineffective-assistance-of-trial-counsel claim; and (4) the state's law required the petitioner to raise the ineffective-assistance-of-trial counsel claim in the initial collateral proceeding.[10] Clark v. Commissioner, Ala. Dep't of Corr., 988 F.3d 1326, 1330 (2021) (citing Trevino v. Thaler, 569 U.S. 413, 423 (2013)); see Fifield v. Sec'y, Dep't of Corr., No. 19-13096, 2021 WL 915768, at *2 (11th Cir. Mar. 10, 2021). A substantial claim is one that has "some merit."

_____

[10]     Florida law generally requires ineffective assistance claims to be raised on collateral review and to be raised within two years after the judgment and sentence becomes final. Fla. R. Crim. P. 3.850(b); see Sullivan v. Sec'y, Fla. Dep't of Corr., 837 F.3d 1195, 1199 (11th Cir. 2016); Rigg v. Warden, Blackwater River Corr. Facility, 685 F. App'x 812, 816 (11th Cir. 2017); see also Robards v. State, 112 So.3d 1256, 1266-67 (Fla. 2013).

Martinez, 566 U.S. at 13-14 (comparing the substantiality requirement to the standard required for a certificate of appealability).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>. <u>See</u> <u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020); <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). The Eleventh Circuit has instructed:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." <u>Id.</u> at 1130-31.[11] Rather, an effective attorney will weed out weaker arguments, even though they may have merit. <u>See</u> <u>id.</u> at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. <u>See</u> <u>id.</u> at 1132. Counsel's

---

[11] <u>Heath v. Jones</u>, 941 F.2d 1126, 1130 (11th Cir. 1991).

> performance will be deemed prejudicial if we find that
> "the neglected claim would have a reasonable
> probability of success on appeal." Id.

See Philmore, 575 F.3d at 1264. Thus, appellate counsel's performance is prejudicial if the omitted claim would have a reasonable probability of success on appeal. Id. at 1265.

Additionally, the United States Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective-assistance-of-counsel claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). In companion decisions in Missouri v. Frye, 566 U.S. 134 (2012), and Lafler v. Cooper, 566 U.S. 156 (2012), the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (footnote omitted). The Court articulated a four-part test to prove prejudice in the context of a foregone guilty plea. Lafler, 566 U.S. at 164; see Frye, 566 U.S. at 147.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." Richter, 562 U.S. at ---, 131
> S.Ct. at 788. But "[e]stablishing that a state court's
> application of Strickland was unreasonable under §
> 2254(d) is all the more difficult. The standards created

> by <u>Strickland</u> and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." <u>Id.</u> (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> <u>Strickland</u> standard was incorrect but whether that
> determination was unreasonable — a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Three

As ground one, Shaabazz asserts that trial counsel (Assistant Public Defender Jason Barrett Snyder) was ineffective because he failed to convey the State's ten-year plea offer. <u>See</u> Petition at 3-5. He states in pertinent part:

18

> Counsel Jason Snyder was ineffective for failing to convey a favorable plea offer of ten (10) years [to be served in the] Florida Department of Corrections as a Prison Releasee Reoffender. Had Counsel properly conveyed the favorable plea offer of ten (10) years[,] Petitioner would have accepted the plea, especially where the Petitioner was facing a possible 30 year sentence as a habitual offender. The prosecutor would have accepted the plea and would not have withdrawn the offer. The Fourth Judicial Circuit would have accepted the favorable plea offer. Finally, the Petitioner's sentence would have been less severe had Counsel properly conveyed the ten (10) year plea offer. As it stands, the Petitioner was prejudiced by Counsel's actions because he did not have the opportunity to make an informed decision and accept the favorable plea offer. Petitioner was further prejudiced because he received a twenty-three (23) year habitual offender sentence (15 minimum mandatory PRR), which is thirteen (13) years more than the favorable plea offer. Absent Counsel's errors[,] there exists a reasonable probability that the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668 (1984).

Petition at 5. Additionally, as ground three, Shaabazz asserts that subsequent trial counsel (Assistant Public Defender Thomas Martin Murphy) was ineffective because he failed "to properly secure" the State's fifteen-year plea offer. Id. at 9. According to Shaabazz, the following events transpired when the State offered the fifteen-year plea.

> At jury selection, Counsel advised Petitioner of a plea agreement for 15-years. Petitioner asked Counsel to tender a counteroffer of 3-years. Petitioner advised Counsel that if the State would not negotiate, he would accept the 15-year plea. Counsel relayed the offer to the State. However, Petitioner never heard back

regarding the plea. At the beginning of trial, Petitioner asked Counsel about the plea negotiations. Counsel advised Petitioner that they were going to trial. Petitioner again asked Counsel about the 15-year plea offer. Counsel again stated that they were going to trial.

Id.

Shaabazz raised the ineffectiveness claim in ground one (relating to the ten-year plea offer) in his amended Rule 3.850 motion. See Doc. 18-13 at 2-8 (ground eight). In the request for postconviction relief, he alleged in pertinent part:

At no point[] did counsel from the public defender relay any plea offer to the Defendant (of whom was housed in the county jail pending disposition of this case) as was extended by the state prosecutor before arraignment on the 7th day of May, 2012. **Due to initial counsel Jason Snyder not extending the original ten-year offer to the Defendant on the burglary charge with the State of Florida agreeing to waive enhancement as a habitual felony offender, but insist on prison releasee reoffender.** And, without any reservation, the Defendant would have taken such offer as he did receive a 23-year sentence as a habitual felony offender, and a 15-year minimum mandatory component as a prison releasee reoffender. Under such guise and ineffective representation of counsel, the state prosecutor was under the impression that the Defendant rejected the offer.

But, the truth of the matter was that **[Shaabazz] only learned of such plea from successor counsel during a latter hearing sidebar with Tom Murp[]hy** whe[n] it c[a]me about [in] an argument of why he did not accept the state prosecution's lone offer.

> **And, the truth is that the Defendant had no idea of what he was rambling about in a rathe[r] nervous conversation.**

Doc. 18-13 at 3-4 (emphasis added). The circuit court denied the amended Rule 3.850 motion as to the ineffectiveness claim, stating it was a new claim "raised outside the two-year filing period," and therefore was "procedurally barred as untimely." Doc. 18-14 at 8. Additionally, the court concluded that the claim was "refuted by the record, as the State only offered a fifteen year plea deal the day of trial, which counsel conveyed to [Shaabazz]." <u>Id.</u> (citing Docs. 18-1 at 131-32; 18-14 at 126-27). The First DCA affirmed the circuit court's denial of Shaabazz's amended Rule 3.850 motion per curiam without issuing a written opinion. <u>See</u> Doc. 18-16 at 1.

Respondents argue that Shaabazz did not properly exhaust these ineffectiveness claims in the state courts, and thus, the claims are procedurally barred. <u>See</u> Response at 16-17, 20. They contend that Shaabazz never raised the ineffectiveness claim in ground three (relating to the fifteen-year plea offer) in his amended Rule 3.850 motion. <u>See</u> <u>id.</u> at 20. Shaabazz asks that the Court review the merits of his ineffectiveness claims under <u>Martinez</u>, 566 U.S. 1, because he was not represented by counsel during the postconviction proceeding, and the ineffectiveness claims are "of substantial magnitude." Petition at 5, 9; <u>see</u> Reply at 1-3. The Court agrees that the ineffectiveness claims are procedurally barred since Shaabazz failed to raise the claims in a

procedurally correct manner. Shaabazz has not shown either cause excusing the default or actual prejudice resulting from the bar.[12] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Shaabazz's claims are not procedurally barred, Shaabazz is not entitled to federal habeas relief on these ineffectiveness claims. A chronology of relevant facts follows. Prior to jury selection on July 15, 2013, Assistant State Attorney Brady, in Shaabazz's presence, stated in pertinent part:

> Before you bring the jurors in, I'd just like to put on the record, that Mr. Shabazz is a 13 time convicted felon.[13] He's looking at 15 to 30 years. I have not received any defense offers. I just wanted to put that on the record, that **Mr. Murphy has talked with his client, and Mr. Shabazz is not making any offers to the State at this time.**

Tr. at 15 (emphasis added). Prior to the August 20, 2013 sentencing, Shaabazz filed a pro se "Motion for <u>Nelson</u> Inquiry Hearing" (<u>Nelson</u> Motion). <u>See</u> Doc.

---

[12] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." <u>Martinez</u>, 566 U.S. at 14. As discussed in the alternative merits analysis that follows, these ineffectiveness claims lack any merit. Therefore, Shaabazz has not shown that he can satisfy an exception to the bar.

[13] At trial, Shaabazz stipulated that he had thirteen prior felonies, including some burglaries. <u>See</u> Tr. at 306.

18-1 at 107-10. In the <u>Nelson</u> Motion, Shaabazz asked that the state circuit court remove his attorney (Thomas Murphy) and replace him with another attorney. <u>See</u> <u>id.</u> at 110. According to Shaabazz, Murphy was appointed in December 2012, <u>see</u> <u>id.</u> at 107, and "ignored" Shaabazz's request that Murphy pursue "the possibility of a plea agreement," <u>id.</u> at 108. Shaabazz also complained about Murphy's lack of communication and defense strategy, among other things. <u>See</u> <u>id.</u> at 108-09. Shaabazz neither asserted that he had discovered that there had been a prior ten-year offer, that the State had made a fifteen-year offer, that he had made a three-year counteroffer, nor that Murphy failed to tell the prosecutor that Shaabazz was willing to accept the State's fifteen-year offer if the State refused Shaabazz's three-year counteroffer. At the sentencing, Murphy advised the state circuit court that Shaabazz had filed a pro se <u>Nelson</u> Motion, and the following colloquy ensued.

> THE COURT: All right. For the record this is a <u>Nelson</u> inquiry and I know it comes at this late stage. We have already had Phase 1 of the sentencing hearing and he was found guilty by the jury at the trial.
>
> I'm looking at Page 2 of 4 and it is Paragraph 3 and the first paragraph is just a general allegation that I don't believe requires any response.
>
> MR. MURPHY: Your Honor, I believe that the <u>Nelson</u> hearing at this point would only go to the inability to complete the sentencing hearing.

THE COURT: Right. I think that sounds right to me. To the extent it is a <u>Nelson</u> request. He's asking the Court to appoint another attorney to represent him for the little bit that we have to do. The Phase 2, where the Court would hear any mitigation and/or aggravation and then sentence the defendant. Thank you for reminding me [of] that counsel. You're correct to the extent that he might be complaining about past, alleged wrongs. They may or may not be relevant.

But what's really relevant is whether you can proceed to competently represent him for the remainder of his sentencing hearing, which we have already been through the first phase.

. . . .

THE COURT: . . . . All right. In 4-1.2a, under Paragraph 3, the defendant in his pro-se motion alleges . . . and I'll read it word-for-word: "Lawyer to abide by client's decisions. The defendant constantly requested that Mr. Murphy pursue[] the possibility of a plea agreement and also requested to be heard as to the defendant's suggestions of defense's strategy. None was ever recognized by Mr. Murphy. He ignored the defendant.

**Mr. Murphy, I now ask you . . . is that true that you never — you ignored him and never recognized his request to possibly plea bargain? First of all, is that true?**

**MR. MURPHY: No, Your Honor.**

**THE COURT: What, in fact, happened, if anything?**

**MR. MURPHY:** Well, Mr. Brady was the State Attorney at that time,[14] and I know that he had given me a -- the only thing that I remember is that we couldn't come to any sort of resolution. I know at one point that Mr. Brady had offered fifteen years and then I remember on the day of the trial --

**THE COURT:** Did – [if] Mr. Brady offered fifteen years, would you have conveyed that to your client?

**MR. MURPHY:** Yes, [a]nd I remember that we did have the conversation on the day of jury selection.[15] I know that Mr. Shabazz had countered with the three years, which I conveyed that to the State.

THE COURT: Okay. **I can see that's a false allegation. . . .**

Sentencing Tr. at 129-32 (emphasis added).

In his amended Rule 3.850 motion, Shaabazz asserted that he learned from Murphy at a sidebar that the State had made a ten-year plea offer (with the State agreeing to waive enhancement as a habitual felony offender,[16] but

---

[14] The record reflects that Assistant State Attorney Brian Daniel Brady was assigned to the case on or about January 2, 2013. See Doc. 18-1 at 5.

[15] See Tr. at 15.

[16] See Doc. 18-1 at 21, Notice of Intent to Classify Defendant as an Habitual Felony Offender ("The State, in conformity with Section 775.084, Florida Statutes, will seek to have the Defendant sentenced to thirty (30) years imprisonment."), filed March 7, 2012.

"insist[ing] on prison releasee reoffender") at the arraignment, but Snyder (his attorney at the March 7, 2012 arraignment)[17] failed to convey it to Shaabazz. Doc. 18-1 at 3. Notably, Shaabazz acknowledged that the State would still seek to have the Defendant sentenced as a prison releasee reoffender, which required a fifteen-year minimum mandatory sentence.[18] As the circuit court stated in denying Shaabazz's amended Rule 3.850 motion, "the State only offered a fifteen year plea deal the day of trial, which counsel conveyed to [Shaabazz]." Doc. 18-14 at 8 (citing Docs. 18-1 at 131-32; 18-14 at 126-27). At sentencing, Murphy recalled that the State had made a fifteen-year plea offer "at one point" in the proceedings, Shaabazz made a three-year counteroffer that Murphy conveyed to the State, and that the parties could not "come to any sort of resolution" on the day of jury selection, and therefore Shaabazz proceeded to trial. Sentencing Tr. at 132. The state trial judge found that Shaabazz had made "false" assertions related to Murphy's failure to pursue a plea agreement. Id.

---

[17] See Doc. 18-1 at 4.

[18] See Doc. 18-1 at 20, Notice of Intent to Classify Defendant as a Prison Release Re-Offender ("The State, in conformity with Section 775.082, Florida Statutes, will seek to have the Defendant sentenced to fifteen (15) years imprisonment."), filed March 7, 2012; see also Sentencing Tr. at 46.

A counsel's failure to convey a plea offer can constitute deficient performance. Frye, 566 U.S. 134 (addressing counsel's failure to communicate to defendant the prosecutor's written plea offer before it expired); Lafler, 566 U.S. 156 (addressing counsel's performance in advising defendant to reject a plea offer and proceed to trial). In order to establish that a failure to convey a plea offer was prejudicial, a petitioner must demonstrate that (1) he "would have accepted the plea"; (2) "the prosecution would not have withdrawn it in light of intervening circumstances"; (3) "the court would have accepted its terms"; and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164; see Frye, 566 U.S. at 147; Carmichael v. United States, 966 F.3d 1250, 1259 (11th Cir. 2020).

The record refutes Shaabazz's assertions in the Petition. He described the circumstances surrounding his discovery of the ten-year plea offer as confusing, stating he had "no idea" what Murphy was "rambling" about at the sidebar when an offer by the State was mentioned. See Doc. 18-13 at 3-4. Notably, the record reflects that the State consistently pursued a term of imprisonment of fifteen years due to Shaabazz's lengthy criminal record that included prior burglaries. See Sentencing Tr. at 132; Docs. 18-14, Order Denying Defendant's Motions for Postconviction Relief, at 8 ("[T]he State only offered a fifteen year plea deal the day of trial, which counsel conveyed to

Defendant."); 18-13 at 3 (acknowledging that the State insisted on a fifteen-year PRR designation and sentence). At sentencing, defense counsel asked the court to sentence Shaabazz to fifteen years of imprisonment. See Sentencing Tr. at 166 (stating "we're coming back essentially to ask for the minimum the Court can give based on some of the mitigation we've proffered [and] ask that you sentence him only to fifteen years.").

Additionally, Shaabazz has not shown, under the Lafler/Frye first prong, that but for counsel's alleged failure to advise him of the offer, he would have accepted a ten-year plea offer at the March 7, 2012 arraignment or a fifteen-year plea offer just before the jury selection on July 15, 2013. See Lafler, 566 U.S. at 164; Frye, 566 U.S. at 147. Shaabazz's consistent denial of guilt is a relevant consideration as to whether he would have accepted a plea offer by the State. The record reflects that Shaabazz minimized his guilt throughout the proceedings. At trial, Shaabazz testified that he was homeless and looking for a place to sleep, but never planned to steal anything inside the house. See Tr. at 319-20. His proclamation of innocence weighs against any claim that he would have accepted a ten or fifteen-year plea offer. See Osley v. United States, 751 F.3d 1214, 1224-25 (11th Cir. 2014) (citing cases). The record reflects his desire to proceed to trial (to testify about his version of the facts that he opined amounted to, at most, trespass) or enter a plea for three years of incarceration. Thus, Shaabazz fails to show a reasonable probability that he would have

accepted a ten or fifteen-year plea offer by the State. His conclusory assertion that he would have accepted a plea offer of ten or fifteen years of imprisonment, without more, is insufficient to satisfy the first prong of the prejudice test. Rosin v. United States, 786 F.3d 873, 879 (11th Cir. 2015) (stressing that the record evidence that the defendant "had absolutely no interest in" pleading guilty contradicted his later claim that he would have done so); see also Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

Additionally, as to the third prong, Shaabazz has not shown that the circuit court would have accepted the terms of a ten or fifteen-year plea offer by the State. At trial, Shaabazz's defense was that his actions amounted to no more than trespass, and he stipulated that he had thirteen prior felonies, including some burglaries.[19] See Tr. at 306. At the sentencing, he continued to minimize his guilt. See Sentencing Tr. at 143-57. Nevertheless, the circuit court judge declared that he did not believe Shaabazz's trial testimony, stating: "[w]ith your history, I think you were trying to commit a burglary." Sentencing Tr. at 169. Given Shaabazz's "horrible" criminal record with five prior burglaries, id. at 167, 170, and his terrorizing the victim who occupied the house that morning, see id. at 140-41, the circuit court judge found that

---

[19] At sentencing, the court stated that Shaabazz's conviction for burglary of an occupied dwelling was his sixteenth felony. See Sentencing Tr. at 168. The prosecutor added that it was his sixth burglary. See id.

Shaabazz was a danger to the community and qualified for HFO and PRR sentencing, see id. at 170.

Accordingly, even assuming deficient performance by counsel, Shaabazz's ineffectiveness claims under grounds one and three are without merit since he has not shown the required Lafler/Frye resulting prejudice. As such, he is not entitled to federal habeas relief on these ineffectiveness claims.

## B. Ground Two

Next, Shaabazz asserts that counsel was ineffective because he failed to advise him, "a 13-time convicted felon," about the advantages and disadvantages of testifying at trial. See Petition at 6-7. He states in pertinent part:

> Petitioner was prejudiced by Counsel's failure to discuss and advise as to the potential benefits and disadvantages of testifying because Petitioner was not able to make an informed decision whether to testify or not. As a result, Petitioner testified during trial that he was a 13-time convicted felon, which the State utilized and highlighted during closing arguments. Further damaging the defense's case, Petitioner during cross-examination admitted to lying to police when he was initially interviewed. Petitioner also disclosed that he broke the window in an attempt to sleep in the home because he was homeless. Accordingly, Counsel's actions resulted in the Petitioner incriminating himself, apprising the jury that he was a burglar, a 13-time felon, and a liar. A result which cannot be considered harmless.

Id. at 7.

Shaabazz raised the ineffectiveness claim in his Rule 3.850 motion. See Doc. 18-11 at 15-17 (ground four). The postconviction court denied relief on this claim, explaining in pertinent part:

> Defendant contends his counsel was ineffective for failing to advise him of the benefits and disadvantages of testifying as a convicted felon. According to Defendant, even though the Court conducted a colloquy with Defendant about his right to testify, this does not obviate counsel's obligation to correctly advise him.
>
> "A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied." Pagan v. State, 29 So.3d 938, 948-49 (Fla. 2009) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla. 1986)).
>
> The record reflects the Court conducted a thorough colloquy with Defendant about his right to testify. (Ex. D at 302-07.)[20] During the colloquy, the Court specifically and elaborately discussed with Defendant how his prior felony convictions could be used against him if he testified. (Ex. D at 304-06.) Defendant acknowledged to the Court that he understood this information. (Ex. D at 304-0[6].) Accordingly, the Court cured any prejudice that may have resulted from counsel's alleged deficiency. As Defendant cannot demonstrate prejudice, he is not entitled to relief on Ground Four. Id.

---

[20] See Tr. at 302-07.

Doc. 18-14 at 3-4. The First DCA affirmed the postconviction court's denial of relief without issuing a written opinion. Doc. 18-16 at 1.

To the extent that the appellate court decided the claim on the merits,[21] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shaabazz is not entitled to relief on the basis of this ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, the claim is without merit. Criminal defendants have a constitutional right to testify on their own behalf. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). That right is personal and fundamental, meaning it cannot be waived by either the court or counsel, but only by the defendant. United States v. Teague, 953 F.2d 1525, 1532 (1992). Counsel gives ineffective assistance with respect to a defendant's right to testify where counsel "has

---

[21] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone." <u>Gallego v. United States</u>, 174 F.3d 1196, 1197 (11th Cir. 1999). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." <u>Teague</u>, 953 F.2d at 1534. Notably, an attorney does not render deficient performance by strategically advising a defendant not to take the stand. <u>Id.</u> at 1533 ("[I]f defense counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify."); <u>United States v. Willis</u>, 273 F.3d 592, 598 (5th Cir. 2001) (counsel could reasonably advise defendant not to testify out of concern that he would be impeached with prior convictions under Fed. R. Evid. 609).

The trial court held a thorough colloquy with Shaabazz after the State rested, during which it advised Shaabazz that if he took the stand the jury would know the number of his prior felony convictions, but not the nature of the convictions. Tr. at 304-06. The trial court specifically informed Shaabazz that he should listen to the advice provided by his attorney, but ultimately it was <u>his</u> decision to choose whether or not to testify. <u>Id.</u> at 303. Shaabazz's exchange with the trial court establishes that he was aware of the manner in

which his prior convictions could be used and understood that it was his right alone to decide whether or not to take the stand.

On this record, Shaabazz has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Shaabazz has not shown any resulting prejudice. Shaabazz has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Shaabazz claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Shaabazz is not entitled to federal habeas relief on ground two.

## C. Ground Four

As ground four, Shaabazz asserts that (a) trial counsel was ineffective because he failed to object to the jury instruction on burglary, see Petition at 10-12, and (b) appellate counsel was ineffective because she failed to raise the issue on direct appeal and argue fundamental error, see id. at 12. He states that the jury instruction on burglary was "erroneous and confusing because it misinformed the jury that it had to find [he] entered with an intent to commit a crime, which the jury could have interpreted to be the charged offense of burglary." Id. at 10. He states that the jury was "never told that in order to convict [him] of burglary, it had to find [he] entered the structure with the

intent to commit <u>theft</u> or <u>an offense other than burglary</u>." <u>Id.</u> at 11 (emphasis added).

Respondents argue that Shaabazz did not properly exhaust these ineffectiveness claims in the state courts, and thus, the claims are procedurally barred. <u>See</u> Response at 21. They contend, and this Court agrees, that Shaabazz raised the ineffectiveness claim in ground 4(a) in his initial Rule 3.850 motion, <u>see</u> Doc. 18-11 at 5-9 (ground one), and the circuit court struck the ground as "legally insufficient" because the court could not "decipher" counsel's alleged deficiencies and "how those specific deficiencies" prejudiced Shaabazz, Doc. 18-12 at 2-3. The circuit court permitted Shaabazz an opportunity to amend the claim, <u>see</u> Doc. 18-12 at 2-3, however, Shaabazz voluntarily withdrew it. <u>See</u> Doc. 18-13 at 2 (stating "the Defendant appends this pleading with modifications, and a voluntary withdrawal of claim[] one"). As to the ineffectiveness claim in ground 4(b), Respondents assert, and this Court agrees, that Shaabazz failed to raise the claim in a state petition for writ of habeas corpus. <u>See</u> Response at 21.

Shaabazz asks that the Court review the merits of his ineffective-assistance-of-trial-counsel claim under <u>Martinez</u> because he was not represented by counsel during the postconviction proceeding, and the claim is "of substantial magnitude." Petition at 12; <u>see</u> Reply at 34. Notably, <u>Martinez</u> applies only to procedurally defaulted claims of ineffective assistance of trial

counsel. See Davila v. Davis, 137 S. Ct. 2058, 2065 (2017); Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013).

The Court agrees that the ineffectiveness claims are procedurally barred since Shaabazz failed to raise the claims in a procedurally correct manner. Shaabazz has not shown either cause excusing the default or actual prejudice resulting from the bar.[22] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming Shaabazz's claims are not procedurally barred, Shaabazz is not entitled to federal habeas relief on these ineffectiveness claims. A chronology of relevant facts follows. On March 2, 2012, the State charged Shaabazz with burglary of an occupied dwelling in violation of Florida Statutes section 810.02(3)(a), as follows:

> HASSAN WALID SHABAZZ on February 7, 2012, in the County of Duval and the State of Florida, did unlawfully enter or remain in a structure, to-wit: a dwelling, the property of Paula Hannans, when another human being, to-wit: Paula Hannans, was in said structure, **with the intent to commit an offense therein**, contrary to the provisions of Section 810.02(3)(a), Florida Statutes.

Doc. 18-1 at 19 (emphasis added). At trial, among other witnesses, Paula

---

[22] As discussed in the alternative merits analysis that follows, these ineffectiveness claims lack any merit.

Hannans (the victim) testified that she saw Shaabazz's head and hands coming through her window that had been broken, see Tr. at 243-70, and Shaabazz testified in his own defense, maintaining that he was homeless and looking for a place to sleep in what he thought was an abandoned house, see id. at 316-41. In closing arguments, the prosecutor and defense counsel discussed the jury instructions, specifically that the State had to prove that Shaabazz intended to commit an offense inside the structure. See Tr. at 379-81, 424-26, 435 (prosecutor's arguments); 401, 410 (defense counsel's arguments).

After closing arguments, the court instructed the jury on burglary as follows:

> To prove the crime of burglary, the State must prove the following two elements beyond a reasonable doubt: Number one, that Hassan Walid Shabazz, the defendant, entered a structure owned by or in the possession of Paula Hannans and, two, at the time of entering the structure, **Hassan Walid Shabazz had the intent to commit an offense in that structure.**
>
> **Now, you may infer that the defendant had the intent to commit a crime inside a structure if the entering of the structure was done stealthily and without the consent of the owner or occupant.**[23]

---

[23] Florida Statutes section 810.07(1) states that "[i]n a trial on the charge of burglary, proof of the entering of such structure or conveyance at any time stealthily and without consent of the owner or occupant thereof is prima facie evidence of entering with intent to commit an offense." Fla. Stat. § 810.07(1).

Now, the entry necessary need not be the whole body of the defendant. It is sufficient if the defendant, with the intent to commit a crime, extends any part of his body into the structure.

Now, the intent with which an act is done is an operation of the mind and, therefore, is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in a case.

Now, even though the -- an unlawful entering or remaining in a structure is proven, **if the evidence does not establish that it was done with the intent to commit an offense, the defendant must be found not guilty of burglary.**

Tr. at 438-39 (emphasis added).[24] The court also instructed the jury on the lesser crimes of attempted burglary of an occupied dwelling and trespass in a structure. See Tr. at 441-44.

Tracking the language of Florida Statutes sections 810.02(1)(b), (3)(a) and 810.07(1), the court's jury instructions on burglary were not improper. See Toole v. State, 472 So.2d 1174, 1175-76 (Fla. 1985); State v. Waters, 436 So.2d 66, 73 (Fla. 1983) ("Indictments and informations charging the crime of burglary or attempted burglary must allege that the accused committed the unlawful act with the intent to commit an offense but need not always specify the offense. Proof of the elements set out in section 810.07 is sufficient to establish prima facie evidence of such intent in a trial on a charge of

---

[24] See Sentencing Tr. at 161-64.

burglary."); see also Joseph v. State, 965 So.2d 357, 358 (Fla. 4th DCA 2007) (stating "[n]or must the judge instruct the jury on the underlying offense which the defendant intended to commit"); Perreault v. State, 831 So.2d 784, 786 (Fla. 5th DCA 2002) ("Although it is not necessary to instruct the jury on the specific offense which the defendant intended to commit within the structure, it is necessary for the jury to find that the defendant entered the premises to commit an offense therein.") (citations omitted).

On this record, Shaabazz has failed to carry his burden of showing that his defense counsel's representation fell outside that range of reasonably professional assistance. Moreover, even assuming arguendo deficient performance by defense counsel for his failure to object to the jury instructions on burglary, Shaabazz has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if defense counsel had objected to the jury instructions. Additionally, as to ground 4(b), Shaabazz has not shown that a reasonable probability exists that the claim would have been meritorious on direct appeal, if appellate counsel had raised the claim in the manner Shaabazz suggests. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Shaabazz is not entitled to federal habeas relief on either ground 4(a) or ground 4(b).

# VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Shaabazz seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Shaabazz "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon

consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Shaabazz appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-1 6/4
c:
Hassan W. Shaabazz, FDOC #112686
Counsel of Record